FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 31, 2019

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MICHAEL K.,[1]<br><br>            Plaintiff,<br><br>     vs.<br><br>ANDREW M. SAUL,<br>COMMISSIONER OF SOCIAL<br>SECURITY,[2]<br><br>            Defendant. | No. 1:18-cv-03165-MKD<br><br>ORDER GRANTING PLAINTIFF'S<br>MOTION FOR SUMMARY<br>JUDGMENT AND DENYING<br>DEFENDANT'S MOTION FOR<br>SUMMARY JUDGMENT<br><br>ECF Nos. 14, 15 |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 14, 15. The parties consented to proceed before a magistrate judge. ECF No.

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them only by their first names and the initial of their last names.

[2] Andrew M. Saul is now the Commissioner of the Social Security Administration. Accordingly, the Court substitutes Andrew M. Saul as the Defendant and directs the Clerk to update the docket sheet. *See* Fed. R. Civ. P. 25(d).

ORDER - 1

4.  The Court, having reviewed the administrative record and the parties' briefing, is fully informed.  For the reasons discussed below, the Court grants Plaintiff's Motion, ECF No. 14, and denies Defendant's Motion, ECF No. 15.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id.* at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152,

1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

rational interpretation, [the court] must uphold the ALJ's findings if they are

supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674

F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an

ALJ's decision on account of an error that is harmless." *Id.*  An error is harmless

"where it is inconsequential to the [ALJ's] ultimate nondisability determination."

*Id*. at 1115 (quotation and citation omitted).  The party appealing the ALJ's

decision generally bears the burden of establishing that it was harmed.  *Shinseki v.

Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within

the meaning of the Social Security Act.  First, the claimant must be "unable to

engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve

months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Second, the claimant's

impairment must be "of such severity that he is not only unable to do his previous

work[,] but cannot, considering his age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy."

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more

severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age,

education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v),

416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the

Commissioner must find that the claimant is not disabled. 20 C.F.R. §§

404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other

work, analysis concludes with a finding that the claimant is disabled and is

therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to

step five, the burden shifts to the Commissioner to establish that 1) the claimant is

capable of performing other work; and 2) such work "exists in significant numbers

in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v.

Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On December 19, 2014, Plaintiff applied both for Title II disability insurance

benefits and Title XVI supplemental security income benefits alleging a disability

onset date of March 1, 2014. Tr. 241-53. The applications were denied initially,

Tr. 169-76, and on reconsideration, Tr. 181-199. Plaintiff appeared before an

administrative law judge (ALJ) on May 8, 2017. Tr. 62-113. On August 7, 2017,

the ALJ denied Plaintiff's claim. Tr. 13-38.

At step one of the sequential evaluation process, the ALJ found Plaintiff has not engaged in substantial gainful activity since March 1, 2014. Tr. 18. At step two, the ALJ found that Plaintiff has the following severe impairments: migraines, gout, depression, anxiety, and substance abuse disorder.[3] Tr. 19.

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 20. The ALJ then concluded that Plaintiff has the RFC to perform medium work with the following exceptions:

> [Plaintiff can] frequently handle and finger with the bilateral upper extremities; [he can have] no concentrated exposure to vibration; [he can have] no more than moderate exposure to noise. Additionally, he can perform simple routine tasks involving simple work-related decisions with occasional workplace changes. He can have occasional interaction with the public, small groups of co-workers, and supervisors. He is able to work in a setting with infrequent changes, avoid hazards, travel to/from work like settings, and carry out goals and plans set by others. While he experiences intermittent interruptions of concentration, persistence, or pace and may need supervisor instructions/redirection once per week or so to help keep him on task, he is capable of being productive at work.

Tr. 22.

_____

[3] The ALJ determined Plaintiff's back pain, vision impairment, right wrist complaints, lumbar and shoulder strains, hand tremor, obsessive compulsive disorder, and "other symptoms and conditions" appearing in the record "from time to time," were non-severe. Tr. 19-20.

ORDER - 7

At step four, the ALJ found Plaintiff is unable to perform any past relevant work.  Tr. 24.  At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as, laundry laborer, marker, and garment sorter.  Tr. 31.  Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from the alleged onset date of March 1, 2014, though the date of the decision.  Tr. 32.

On June 25, 2018, the Appeals Council denied review of the ALJ's decision, Tr. 1-7, making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act.  Plaintiff raises the following issues for review:

1.  Whether the ALJ properly evaluated the medical opinion evidence;

2.  Whether the ALJ properly evaluated Plaintiff's symptom claims; and

3.  Whether the ALJ properly evaluated the lay opinion evidence.

ECF No. 14 at 1, 6-19.

# DISCUSSION

## A. Medical Opinion Evidence

Plaintiff contends the ALJ improperly considered the opinions of treating psychiatric mental health nurse practitioner, Joanna Kass, ARNP, PMHNP-BC, and examining psychologist R.A. Cline, Psy.D. ECF No. 14 at 11-18.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a nonexamining physician's opinion. *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a

treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216. The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other independent evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

In addition to considering the medical opinions of physicians, ALJs must also "consider the opinions of medical providers who are not within the definition of 'acceptable medical sources.' " *Revels v. Berryhill*, 874 F.3d 648, 655 (9th Cir. 2017)(quoting 20 C.F.R. § 404.1527(b),(f) (evaluating opinion evidence for claims filed before March 27, 2017)); *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014). An ALJ may give less deference to "other sources" who are "not acceptable medial sources," but must provide "reasons germane to each witness for doing so." *Revels,* 874 F.3d at 655; *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). An ALJ must also evaluate such opinions using "[t]he same factors used to evaluate the opinions of medical providers who are acceptable medical sources," such as "the length of the treatment relationship and the frequency of examination,

the nature and extent of the treatment relationship, supportability, consistency with the record and specialization of the doctor." *Revels,* 874 F.3d at 655 (citing 20 C.F.R. § 404.1527(c)(2)-(6)).

### 1. Ms. Kass

Plaintiff received primary health care services at Yakima Neighborhood Health Clinic from June 2014 through 2017. Tr. 376-97, 592-670, 975-1026. From August 2015 through 2017, Ms. Kass was Plaintiff's treating psychiatric nurse practitioner at Yakima Neighborhood Health. Tr. 1027. At the administrative hearing, Plaintiff testified he was treated by Ms. Kass weekly for six months, then monthly, then every other month, while simultaneously also attending weekly psychotherapy at the clinic with therapist Jeremy Pietsch, MSW. Tr. 84; *see also* Tr. 784 (statement of Ms. Kass stating the frequency of visits were weekly and monthly). Ms. Kass provided four medical source statements dated September 15, 2015, June 21, 2016, August 19, 2016, and March 8, 2017, opining limitations that would preclude Plaintiff's ability to work. Tr. 110.

### a. Ms. Kass' Opinions

On September 15, 2015, Ms. Kass prepared a mental source statement. Tr. 671-74. She indicated that Plaintiff was severely limited in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and

length of rest periods.  Tr. 672.  In addition to other mild and moderate limitations,

Ms. Kass stated that Plaintiff had marked limitations in eleven areas: (1) the ability

to carry out detailed instructions; (2) the ability to maintain attention and

concentration for extended periods; (3) the ability perform activities within a

schedule, maintain regular attendance and be punctual within customary

tolerances; (4) the ability to sustain an ordinary routine without special

supervision; (5) the ability to work in coordination with or proximity to others

without being distracted by them (6) the ability to respond appropriately to changes

in the work setting; (7) the ability to travel in unfamiliar places or use public

transportation (8) the ability to set realistic goals or make plans independently of

others; (9) restrictions of activities of daily living; (10) difficulties maintaining

social functioning; and (11) difficulties in maintaining concentration persistence or

pace.  Tr. 671-73.  She opined Plaintiff would be off-task over 30% and miss work

four or more days per month.  Tr. 673.

On June 21, 2016, Ms. Kass prepared a second report, which listed

Plaintiff's diagnoses as major depressive disorder, severe, PTSD, hypersomnia,

ADHD, and OCD with persistent fatigue, sadness, and guilt or shame being treated

with weekly psychotherapy and "numerous psychotropics."  Tr. 784.  Ms. Kass

indicated Plaintiff had "persistently high ratings on mood scales."  Tr. 784.  She

opined that regular work would cause Plaintiff's condition to deteriorate and if

working a 40-hour per week schedule, Plaintiff would miss four or more days per month. Tr. 785. She noted that "[Patient] is motivated [and] engaged in treatment but has not experienced significant improvement in past [nine] months." Tr. 785.

On August 19, 2016, Ms. Kass prepared another "Mental Source Statement," opining mostly similar limitations as she did in September 2015, including that Plaintiff would miss four or more days per month and be off-task over 30% of the time. Her opinion changed in that she opined Plaintiff had "extreme" (as opposed to marked) difficulties maintaining social functioning and difficulties in maintaining concentration persistence or pace. Tr. 794. Ms. Kass reduced Plaintiff's previously marked limitations to only moderate in the ability to set realistic goals or make plans independently of others and mild in restrictions of activities of daily living. Tr. 793. She noted the opinions stated were those "of the treatment team." Tr. 794.

Finally, on March 8, 2017, Ms. Kass wrote a letter stating that despite good engagement in regular medication management appointments and counseling with a behavioral health specialist through our clinic, [Plaintiff] continues to struggle with significant and often debilitating symptoms of major depressive disorder and post-traumatic stress disorder, among other diagnoses." Tr. 1027. She opined he suffers from "severe" and "chronic" "treatment-resistant" symptoms, including auditory hallucinations and hypersomnia, and "frequent dissociative episodes." Tr.

1027.  Ms. Kass indicated that both pharmacological and nonpharmacological treatment options have been explored without relief.  Tr. 1027.

The ALJ assigned Ms. Kass' opinions "minimal weight."  Tr. 22, 30.  Under the regulations in effect at the time of Plaintiff's application, a psychiatric mental health nurse practitioner was not considered an "acceptable medical source."[4]  As an "other source," the ALJ was required to identify germane reasons for rejecting Ms. Kass' opinions.  *Dodrill*, 12 F.3d at 919.

### b. Treatment Relationship

In determining the weight to give Ms. Kass' opinions, the ALJ first acknowledged she was a treating source, however, the ALJ's decision as well as his statements at the administrative hearing reflect uncertainty regarding the

---

[4] "The Social Security regulations provide an out-dated view that consider a nurse practitioner as an 'other source.' "  *Popa v. Berryhill*, 872 F.3d 901 (9th Cir. 2017) (as amended).  The Social Security Administration has adopted new rules applicable to claims filed after March 27, 2017, which expand the category of acceptable medical providers to include, among others, nurse practitioners.  20 C.F.R. §§ 404.1502(a)(6), (7), (8); 416.902(a)(6), (7), (8) (2017); Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017).  The revisions do not apply to Plaintiff's claims filed in December 2014.

ORDER - 14

precise role Ms. Kass played in Plaintiff's mental health care. Tr. 29. The nature

and extent of the treatment relationship is one factor the ALJ considers in

determining the weight to give a medical opinion. 20 C.F.R. §§ 404.1527(c)(1)-

(6), 404.1527(f)(1), 404.1502(a). "Under certain circumstances, the opinion of a

treating provider who is not an acceptable medical source may be given greater

weight than the opinion of a treating provider who is—for example, when the

provider 'has seen the individual more often than the treating source, has provided

better supporting evidence and a better explanation for the opinion, and the opinion

is more consistent with the evidence as a whole.' " *Revels*, 874 F.3d at 648 (citing

20 C.F.R. § 404.1527(f)(1)).

Here, the ALJ found that Plaintiff had identified "this source" as his

"medication manager"[5] and the ALJ acknowledged that the record "references this

treatment relationship," although Ms. Kass' treatment notes were not included in

the record. Tr. 29. Defendant contends the ALJ "correctly noted" Ms. Kass "knew

Plaintiff only as his medication manager" and "correctly observed" she "was not

_____

[5] Though Ms. Kass referred to herself as a "medication manager," Plaintiff

consistently referred to Ms. Kass as his psychiatrist. Tr. 76, 84, 835, 845, 910,

928. At the administrative hearing, Plaintiff identified Ms. Kass as his

psychiatrist." Tr. 84. As noted above, Ms. Kass is a psychiatric nurse practitioner.

ORDER - 15

part of Plaintiff's treatment team." ECF No. 15 at 10-11. Contrary to Defendant's contention, the membership of Plaintiff's treatment team was not an observation made by the ALJ. Tr. 24 ("He switched to Neighborhood Health, where he presented to a medication manager and therapist."); Tr. 29 (noting Ms. Kass' "treatment relationship"). Moreover, Defendant's claim that the ALJ did not view Ms. Kass as a member of Plaintiff's treatment team appears based upon a misreading of a comment written by Ms. Kass in her September 2015 report. ECF No. 15 at 10 (citing Tr. 673). The report contains the questions: "Is this patient treated by a treatment team?" and "If yes, are the above opinions the opinions of the treatment team?" Tr. 673. Ms. Kass checked "yes," Plaintiff was being treated by a treatment team and checked "no" to the second question, indicating the opinions expressed were not those of the treatment team. She then handwrote: "[j]ust medication manager for psychiatry." Tr. 673. Defendant claims this comment "emphasized" she was not on the treatment team, when it appears to have indicated only that the opinion was her own. *See* Tr. 673 (comment by Ms. Kass noting that the treatment team did not include an M.D. or Ph.D., only ARNPs). Ms. Kass furnished the opinion of the treatment team later in August 2016. *See* Tr. 794.

The record reflects a lack of clarity as to the nature and extent of Ms. Kass' treatment relationship over time. At the administrative hearing, the ALJ referred to

her as "Dr." Kass, though she is not a physician. Tr. 87, 94, 98. In his decision, the ALJ identified Ms. Kass as "the claimant's therapist," Tr. 16, though the record evidences psychotherapy was performed by Mr. Pietsch, not Ms. Kass. Tr. 84. The ALJ acknowledged Ms. Kass' credentials as an ARNP, but not her additional specialty and credentials in psychiatry as a PMHNP-BC. Tr. 16. Elsewhere in the decision, the ALJ referred to Ms. Kass as Plaintiff's "medication manager," Tr. 24, 26, however, Ms. Kass described her role more expansively as: "psychiatric care and medication management for [Plaintiff] since August 2015." Tr. 1027.

The record suggests Ms. Kass and Mr. Pietsch were Plaintiff's primary mental health treatment providers from August 2015 through the date of the administrative hearing. Tr. 91, 337, 705, 707, 786, 803, 835, 872, 949, 964, 1003, 1011-12, 1027. According to Ms. Kass and the testimony of Plaintiff, the frequency of examination by Ms. Kass was weekly at first, and then monthly, however this frequency cannot be verified without treatment records. Tr. 84, 784. It can be gleaned only from treatment records of other providers that Ms. Kass both prescribed medication and referred Plaintiff to specialists for sleep evaluations. Tr. 339, 703, 786.

The lack of clarity as to the nature of the treating role of Ms. Kass was likely attributable to the ALJ's failure to fully develop the mental health treatment record, as discussed below. On remand, the ALJ must consider all of the opinion evidence

in accordance with the regulatory factors, including the nature and extent of the treatment relationship.

### c. Lack of Supporting Evidence; Missing Treatment Records

Despite having treated Plaintiff on a weekly and monthly basis for nearly two years prior to the administrative hearing, there are no treatment notes of Ms. Kass in the record. The ALJ acknowledged this gap in the record, yet rejected Ms. Kass' opinions due to lack of support in the treatment record, lack of explanation, lack of reference to "specific findings and observations," and his conclusion that Ms. Kass "appeared to rely entirely on the claimant's subjective allegations." Tr. 29. Plaintiff contends the missing mental health treatment records triggered the ALJ's duty to develop the record. ECF No. 14 at 17-18; ECF No. 16 at 3. Defendant contends the record "was fully and fairly developed" as Plaintiff's counsel failed to inform the ALJ of any other outstanding evidence. ECF No. 15 at 11.

Although the claimant is ultimately responsible for providing sufficient medical evidence of a disabling impairment, it has "long [been] recognized that the ALJ is not a mere umpire at [an administrative hearing], but has an independent duty to fully develop the record[.]" *Higbee v. Sullivan*, 975 F.2d 558, 561 (9th Cir. 1992) as amended (Sept. 17, 1992) (per curiam). "In Social Security cases, the ALJ has a special duty to develop the record fully and fairly and to ensure that the

claimant's interests are considered, even when the claimant is represented by counsel." *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001) (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) ). The ALJ's duty to develop the record is heightened where the claimant may have mental health issues. *See Tonapetyan*, 242 F.3d at 1150. However, an ALJ's duty to develop the record is triggered (1) when there is ambiguous evidence or (2) when the record is inadequate to allow for proper evaluation of the evidence. *Mayes*, 276 F.3d. at 459–60.

Here, the records requested and received from Yakima Neighborhood Health are found at Exhibits 3F, 10F, and 29F. Tr. 376-97, 592-70, 975-1026. Though Exhibit 29F pertains to the period of time Ms. Kass and Mr. Pietsch treated Plaintiff's mental health symptoms, only Plaintiff's primary medical care records were included. All of the mental health treatment records since August 2015 at Yakima Neighborhood Health are missing. Plaintiff claims this is "[f]or an unknown reason." ECF No. 14 at 17.

Defendant argues remand is not warranted for two reasons. First, Defendant claims "the clinic notes do not exist" because Ms. Kass "was not part of the Plaintiff's treatment team." ECF No. 15 at 11. For the reasons explained above, the Court rejects this unsupported assertion. Even if Defendant were correct, it

remains that none of Plaintiff's regular mental health treatment records since August 2015 are included in the record.

Second, Defendant claims the ALJ discharged his duty to fully and fairly develop the record by confirming with Plaintiff's counsel that there was no outstanding evidence. ECF No. 15 at 11; Tr. 16 ("The representative did not indicate that there was any other outstanding evidence."). Prior to the hearing, Plaintiff's counsel requested that the ALJ assist in obtaining the records and provided a list of the required providers including Yakima Neighborhood Health. Tr. 341-43. The Court finds troubling that Plaintiff's counsel failed to identify the deficiency in the record either in her pre-hearing memo or at the administrative hearing. Tr. 347 (listing outstanding records); 67. Counsel's oversight is at least partly responsible for the ALJ's error. Nevertheless, where there is an obvious gap in the medical evidence, the ALJ has an independent duty to fully and fairly develop the record, even where the claimant is represented by counsel. *Tonapetyan*, 242 F.3d at 1050. Here, the ALJ never attempted to ascertain whether the missing treatment records existed, despite being aware of their absence. At the hearing, the ALJ indicated he was "paying a lot of attention to" Ms. Kass' opinions because "I'm pretty sure that's not going to allow you to be able to work." Tr. 88, 94. With no treatment records to fill the gap, the ALJ inquired of Plaintiff: "When you go see this Dr. Cass, and I got a bunch of reports here from her by the way, but

when you go see her, how does that work? What does she do? You walk into her office I guess, right?" Tr. 94. The ALJ then asked Plaintiff whether Ms. Kass or Mr. Pietsch "do any testing," because "I've got a CT scan and I've got some other reports," and "[t]here is a sleep study," but "*I don't have anything else.*" Tr. 95 (emphasis added). In other words, it is clear that the ALJ was on notice that Plaintiff's mental health record as of August 2015 was not complete, yet the ALJ did not conduct an appropriate inquiry into the records he identified as missing. *See, e.g., Gasparyan v. Astrue*, 378 F. App'x 644 (9th Cir. 2010) (remanding for further development of the record where the ALJ did not conduct inquiry into the records he identified as missing).

The lack of a complete record relating to Plaintiff's mental health treatment is particularly problematic in this case. First, Plaintiff's primary complaint is mental health-related and as the ALJ advised Plaintiff at the administrative hearing:

> [I]t looks like you're going to have a lot of problems with focus and concentration and the doctors all talk about it, it's measuring it that's the problem. And you know, unfortunately you have the kind of issues here that you can't see. Doctors can't really measure them, we can't really see them.

Tr. 112. Second, the ALJ's reasoning in the written determination often hinged on the scarcity of evidence relating to Plaintiff's mental health impairments. Tr. 20 (OCD was "neither diagnosed, nor even explored, in his mental health treatment."); Tr. 20 ("Other symptoms and conditions appear in the record from

ORDER - 21

time to time, but they did not cause significant limitations in functioning, or did not last for a continuous period of 12 months."); Tr. 21 ("While the claimant alleged dissociative episodes, I did not find these caused more than moderate limitation."); Tr. 22 (concluding "I did not find a basis for her opinion in her clinical notes either," though the ALJ received no clinic notes); Tr. 24 ("The claimant based his disability claim in large part on subjective complaints; therefore, the consistency of his allegations with the record as a whole is of utmost importance in this analysis."); Tr. 24 ("the treatment record fails to establish more restricting functioning"); Tr. 24 ("primary allegations are regarding purported dissociative episodes and hypersomnia, but the record does not reflect the extent of the claimant's allegations."); Tr. 25 ("first mention of such episodes" was on December 1, 2015 "yet there was no mention of such episodes previously"); Tr. 25 ("Yet the claimant rarely mentioned such episodes to his clinicians"); Tr. 25 ("the claimant's presentation was consistently noted to be within normal limits"); Tr. 25 ("episodes of 'dissociation' are few and not limiting or disruptive on a chronic basis); Tr. 25 ("clinical notes . . . do not mention panic attacks"); Tr. 25 ("even if the claimant were experiencing more frequent symptoms of anxiety than reflected in his treatment records, such anxiety was not to the extent that medical intervention of any kind was necessary"); Tr. 26 ("He had a clinician at Yakima Neighborhood Health Services complete paperwork confirming he was receiving

therapy, but this appears to be a singular event for the purpose of establishing continuing eligibility for State benefits."); Tr. 26 ("It is unclear whether his medication manager was aware of his marijuana use."); Tr. 29 (rejecting Ms. Kass' opinion as "completely speculative and unsupported").

The inadequate record triggered the ALJ's duty to conduct an appropriate inquiry and develop the record further. *Mayes*, 275 F.3d at 459-60. Some of the means available to an ALJ to supplement an inadequate medical record are to obtain additional information by subpoenaing records, submitting questions to the medical source, scheduling consultative examinations, calling a medical expert, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record. *Tonapetyan*, 242 F.3d at 1150. Merely asking Plaintiff to describe his examinations with Ms. Kass ("how does that work? What does she do? You walk into her office I guess, right?") does not satisfy the ALJ's duty to conduct an appropriate inquiry and develop the record fully and fairly. Tr. 94. Given that Ms. Kass furnished three reports and a letter describing numerous marked and extreme limitations, it is likely that information related to her opinion is found in the nearly two years' worth of missing mental health treatment notes.

The ALJ was on notice of the obvious gap in Plaintiff's mental health treatment record and this gap informed his rejection of Plaintiff's treating medical source opinions and determination that Plaintiff is not disabled. Given the critical

importance of the missing records to the ultimate issue in this case, the Court concludes the ALJ did not satisfy his duty to develop the record. This necessitates remand for further administrative proceedings consistent with this disposition.

**B. Remaining Arguments**

Plaintiff has set forth additional arguments related to the ALJ's rejection of the opinion of Dr. Cline, Plaintiff's symptom claims, and the lay witness evidence. However, because the Court has determined that the remand is required in order to complete the mental health record, the Court declines to reach these issues.

**C. Remedy**

Plaintiff urges the Court to remand for an immediate award of benefits. ECF No. 14 at 20.

"The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)). When the Court reverses an ALJ's decision for error, the Court "ordinarily must remand to the agency for further proceedings." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). However, in a number of Social Security

cases, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits" when three conditions are met. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (citations omitted). Under the credit-as-true rule, where (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand, the Court will remand for an award of benefits. *Revels*, 874 F.3d at 668.

Here, the first prong of the credit-as-true rule is not met. As discussed above, the record has not been fully developed and therefore remand for an award of benefits is not appropriate. Upon remand, the ALJ shall: (1) develop the mental health record and attempt to secure the entirety of Plaintiff's mental health treatment record, including all records from Yakima Neighborhood Health, Ms. Kass and Mr. Pietsch; (2) review all additional records and consider whether the additional information warrants an independent medical source who has reviewed the entirety of Plaintiff's treating history is necessary or would be helpful to the RFC assessment; (3) conduct a de novo administrative hearing, providing Plaintiff with the opportunity to testify; (4) reevaluate the medical source opinions, and

explain the weight afforded to each of these opinions; (5) conduct the sequential evaluation anew and issue a new decision.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this court concludes the ALJ's decision is not supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. The District Court Executive is directed to substitute Andrew M. Saul as the Defendant and update the docket sheet.

2. Plaintiff's Motion for Summary Judgment, ECF No. 14, is **GRANTED**.

3. Defendant's Motion for Summary Judgment, ECF No. 15, is **DENIED**.

4. The Court enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for further proceedings consistent with this recommendation pursuant to sentence four of 42 U.S.C. § 405(g).

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE.**

DATED July 31, 2019.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE